ORDERED in the Southern District of Florida on 06/12/09.



Raymond B. Ray, Judge
United States Bankruptcy Court

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov
Broward Division

In re:                                                  Case No. 09-11971-BKC-RBR
                                                        Involuntary Chapter 7 Case
AURORA CAPITAL, INC.,

    Alleged Debtor.
_____/

### ORDER DENYING MOTION TO DISMISS INVOLUNTARY PETITION

THIS MATTER came before the Court upon the Motion to Dismiss Involuntary Petition (the "Motion to Dismiss") [D.E. 4 and D.E. 8], filed by Alleged Debtor Aurora Capital, Inc. ("Aurora"), and the Responses thereto [D.E. 20, D.E. 23 and D.E. 26], filed by Decon Worldwide, Inc. ("Decon"), Cherie Dori, Inc. ("CDI"), Yoel Saraf Living Trust ("Y. Saraf"), and Rina Saraf Living Trust ("R. Saraf") (collectively, the "Petitioners"). Aurora and the Petitioners also filed memoranda of law in support of their respective pleadings [D.E. 57, D.E. 63, D.E. 94 and D.E. 95]. For the reasons delineated below, the Court will deny the Motion to Dismiss.

### Background and Procedural History

Aurora is a Florida corporation. It is the parent holding company of certain subsidiaries, including Flamingo Enterprises, Inc. d/b/a Flamingo Financing ("Flamingo"), that finance the purchase of used automobiles through the acquisition of retail installment sales contracts.

Bank of America, N.A. ("BOA") is the holder of a secured promissory note issued by

Flamingo pursuant to the terms of a loan agreement dated March 7, 2002.  The note was in the original principal amount of $20,000,000.00.  As of August 1, 2007, BOA and Capital One, N.A. (collectively, the "Banks"), as lenders, and Flamingo, as borrower, entered into the "Amended and Restated Loan and Security Agreement" (the "Credit Agreement").  Pursuant to the Credit Agreement, the Banks agreed to provide for loans and advances of up to $65,000,000.00 to Flamingo (the "BOA Loan") with Aurora as a guarantor of the debt.

Section 9.14 of the Credit Agreement restricts the ability of Aurora and Flamingo to prepay holders of subordinated debt:

> Neither the Borrower [Flamingo]...or Guarantor [Aurora] shall voluntarily prepay any Debt except the Obligations [to BOA] in accordance with the terms of this Agreement.  The foregoing notwithstanding, <u>provided</u> no Default or Event of Default shall have occurred and be continuing and <u>further provided</u> no such payment shall cause a default of any financial or other covenant in this Agreement (i) [Flamingo] may pay when due all regularly scheduled payments of interest and principal due on all Subordinated Debt and (ii) [Flamingo] may prepay Subordinated Debt to any individual or other entity not affiliated to [Flamingo] during any fiscal year in such amounts acceptable to [Flamingo] by <u>further provided</u> after such payment has been made [Flamingo] maintains Excess Availability in an amount of not less than 5%.

On June 1, 2005, Aurora, as promissor, executed and delivered one promissory note each to R. Saraf (the "R. Saraf Note") and Y. Saraf (the "Y. Saraf Note" and, collectively with the R. Saraf Note, the "Saraf Notes").  The terms of the Saraf Notes include the phrase "Promissee acknowledges and understands that this instrument is subordinate to the Promissor's senior lender."

Aurora, as promissor, also entered into two loan agreements with Decon, as promissee, on August 18, 2005, and May 9, 2007 (the "Decon Agreements").  The promissory notes memorializing the Decon Agreements (the "Decon Notes"), state the following in the section entitled "Subordination to Institutional Debt":

> For purposes of this Section, the term "Institutional Debt" means all indebtedness of the Borrower [Aurora] to any financial institution...including, but

> not limited to, all indebtedness and other amounts payable to Bank of America, N.A. and each of the other lenders under the [Credit Agreement] dated as of August 1, 2007 between [Aurora] and such lenders...
>
> Upon the occurrence...of any event of default with respect to the Institutional Debt, [Aurora] shall not make and the Lender [Decon] shall not accept any further payment of principal and interest or any other sum in connection with the indebtedness evidenced by this Note until the event of default is cured or waived in writing by [BOA] or until all Institutional Debt has been paid in full.

The Court will refer to these provisions as the "Subordination Provisions."

In March 2005, Aurora, as promissor, entered into a loan agreement with CDI, as promissee. The promissory note memorializing that agreement (the "CDI Note") is similar in form to the Decon Notes and contains the Subordination Provisions.

Aurora issued a "Confidential Offering Memorandum" (the "Offering Memo"), dated September 2006, to its noteholders (including the Petitioners) in connection with proposed investments into Aurora. The first page of the Offering Memo states, "This offering memorandum describes the 2006 note program of Aurora Capital, Inc. (the "Company")...the notes will be unsecured obligations of the Company. The notes will be effectively subordinated to all liabilities of the Company's subsidiaries."

Page 16 of the Offering Memo further states:

> If we cannot comply with the requirements in our principal secured credit facility, the lender may prohibit us from drawing additional amounts under the facility, increase our borrowing costs or require us to repay immediately all of the outstanding debt under our principal secured credit facility. If the lender accelerates our obligations...our assets may not be sufficient to satisfy these obligations. In this event, the lender may require us to use all of our available cash to repay those obligations, foreclose its lien on our assets and prevent us from making payment to other creditors, including the holders of the notes.

On December 5, 2007, Rina Saraf as Trustee for the R. Saraf Trust executed a subscription agreement with Aurora (the "R. Saraf Subscription"). The R. Saraf Subscription provides in part, "the Subscriber [R. Saraf] desires to subscribe for and purchase from [Aurora] a Note," and that Aurora "desires to issue...the Purchased Note to the Subscriber, subject to the

terms and conditions set forth in this Agreement" in reference to the R. Saraf Note.

Yoel Saraf as Trustee for the Y. Saraf Trust also executed a subscription agreement with Aurora on December 5, 2007, and CDI executed a subscription agreement with Aurora on February 1, 2008. Like the R. Saraf Subscription, these agreements state, "the Subscriber desires to subscribe for and purchase from [Aurora] a Note" in reference to already existing notes (the Y. Saraf Note and CDI Note, respectively).

All three subscription agreements contain the following language:

> Subscriber understands that...the Notes are expressly subordinate and junior in right of payment to the prior payment in full cash of all indebtedness under the [Credit Agreement]...in the event of any insolvency of bankruptcy proceedings...relative to [Aurora], all principal of, premium, if any, or interest on all indebtedness owing under the [Credit Agreement] shall first be paid in full before any payment on account of principal, premium, if any, or interest shall be made upon the indebtedness evidenced by this Note.

On May 23, 2008, BOA issued a "Notice to Stop Payment on Subordinated Debt" (the "Stop Payment Notice") to Flamingo. The Stop Payment Notice describes certain defaults under the BOA Loan and directs Flamingo to make no further payments of principal or interest in connection with any Subordinated Debt, as defined in the Credit Agreement.[1] Since the Stop Payment Notice, Aurora and Flamingo have not made any payments to their respective promissory noteholders (including the Petitioners).

On February 4, 2009, the Petitioners commenced this involuntary petition against Aurora. On February 25, 2009, Aurora filed its Motion to Dismiss (the "Motion to Dismiss") [D.E. 4]. The Motion to Dismiss alleges, *inter alia*, that the Petitioners are each holders of subordinated, unsecured promissory notes. As such, the Stop Payment Notice subjects the Petitioners' claims to a *bona fide* dispute as to liability and disqualifies them as petitioning creditors under the Bankruptcy Code.

---

[1] As of the date of the Motion to Dismiss, BOA was owed in excess of $20,000,000 on the BOA Loan.

Page 4 of 8

At a hearing before the Court on May 19, 2009, to consider Aurora's Emergency Motion for Authority to File Additional Submissions in Support of Motion to Dismiss and Extend the Deadline to Submit its Memorandum [D.E. 44], the Court confirmed that it would treat the Motion to Dismiss as a motion for summary judgment and would set the matter for trial if it determined summary judgment was not appropriate. Counsel for Aurora and the Petitioners were also directed to submit memoranda of law in support of their respective positions to the Court by May 26, 2009.

After reviewing these memoranda [D.E. 57 and D.E. 63], the Court issued the Order Requesting Submissions on June 4, 2009 (the "Order") [D.E. 83]. The Order requested additional memoranda of law that focused narrowly on the issue of whether "a dispute as to the existence of a subordination agreement constitutes a dispute as to the liability of amount of a claim under 11 U.S.C. § 303(b)." Counsel for Aurora and the Petitioners filed their additional memoranda on June 9, 2009 [D.E. 94 and D.E. 95].

## Conclusions of Law

Federal Rule of Civil Procedure 56(c), incorporated by Federal Rules of Bankruptcy Procedure 7056, provides that summary judgment shall be granted if the pleadings, depositions, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. A fact is deemed "material" if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Section 303 of the Bankruptcy Code governs involuntary petitions. Section 303(b) states in relevant part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a

> bona fide dispute as to liability or amount...if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]

In addition, § 303(h) states that when a petition has been timely controverted, the court shall order relief if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a *bona fide* dispute as to liability or amount."

Read together, these provisions establish a four part test for a contested involuntary petition commenced by a sole petitioning claimholder: (1) the petitioning claimholder's claim is not contingent as to liability or subject to a bona fide dispute as to liability or amount,[2] (2) the petitioning claimholder is undersecured by at least $13,475; (3) there are fewer than twelve claimholders (subject to certain exceptions); and (4) the alleged debtor is generally not paying its debts as they come due. *In re Euro-American Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007).

Nothing in the record indicates that the latter three factors of this test are disputed. The narrow issue before the Court is whether there is a *bona fide* dispute as to the liability or amount of the Petitioners' claims.

Aurora alleges that because the Petitioners' "right to payment is subordinate to any senior lender whose debt is in default, the liability is the subject of a *bona fide* dispute" [D.E. 94, p. 3]. The Court disagrees. The plain meaning of legislation should be conclusive, "except in those rare cases where the literal application of the statute would produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989). The Court understands "liability" to mean "[a] financial or

---

[2]The 2005 Bankruptcy Abuse Prevention and Consumer Protection Act, Pub.L. No. 109-8, §§ 1234(a)(1)(A) and (a)(12), 119 Stat. 23 (April 20, 2005) ("BAPCPA") amended sections 303(b)(1) and 303(h)(1) of the Bankruptcy Code to add the words "as to liability or amount" following the phrase "*bona fide* dispute."

pecuniary obligation." *Black's Law Dictionary* (8th ed. 2004). Whether or not the Petitioners' notes are subordinated, they represent financial obligations of Aurora. Accordingly, Aurora's contention that the Petitioners' notes are subordinated does not create a *bona fide* dispute as to the liability of the notes.

Aurora also cites *In re IMI Acquisition of Boca Raton Corp.*, an involuntary bankruptcy case with facts similar to the ones at hand, in support of the Motion to Dismiss. 221 B.R. 35, 37 (Bankr. S.D. Fla. 1998). The alleged debtors in *IMI* responded to an involuntary petition by asserting that, pursuant to a loan agreement with their institutional lender, notes held by the petitioning creditors were subordinated and could not be paid. 221 B.R. at 37. The *IMI* court ruled that this defense constituted a *bona fide* dispute under § 303 and dismissed the case. 221 B.R. at 38.

The Court notes that *IMI* was decided in 1998, almost a decade before BAPCPA amended sections 303(b)(1) and 303(h)(1) of the Bankruptcy Code to add the words "as to liability or amount" following the phrase "*bona fide* dispute." The *IMI* court ruled for the alleged debtors simply because they raised a meritorious contention as to the application of law to undisputed facts. 221 B.R. at 37. In contrast, the issue in the present case is not whether the Petitioners' claims are subject to a *bona fide* dispute, but whether that dispute relates to the liability or amount of the claims.

No party in interest has disputed that the notes held by the Petitioners are valid obligations of Aurora, or the dollar amount that is owed on the notes. There is therefore no *bona fide* dispute as to the liability or amount of the Petitioners' claims under 11 U.S.C. § 303 and it is

**ORDERED** that the Motion to Dismiss Involuntary Petition [D.E. 4 and D.E. 8] is **DENIED**.

###

The Clerk shall provide copies to:

Paul Steven Singerman, Esq.

*Attorney Singerman is directed to serve a conformed copy of this order upon all interested parties and to file a certificate of service in accordance therewith.*